UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES,

    Plaintiff,

v.                                           Case No.   08-20499

PETER LUKASAVITZ,

    Defendant.
                                                /

**OPINION AND ORDER DENYING DEFENDANT'S 28 U.S.C. § 2255 MOTION**

Peter Lukasavitz collected and distributed inordinately disturbing child pornography. The government investigated and he was indicted for receiving, possessing, and transporting this material. 18 U.S.C. § 2252A(a)(1), (a)(2)(A), (a)(5)(B). He pleaded guilty to the count of transportation, the government dropped the two other counts, and, as a result, Lukasavitz faced a statutory maximum sentence of 240 months' imprisonment. At the sentencing hearing the prosecutor observed:

> If the Government was adamant about some sentence higher than [240 months], by simply not dismissing the second count of his indictment, we could have achieved a circumstance where the Court would have been in a position to assess to him two [240-month] statutory . . . maximums consecutively.

(Dkt. # 28 at 33.) Avoiding this possibility was, of course, a reason —and likely the reason— that Lukasavitz accepted a plea bargain. The government recommended lowering the sentence further, to 180 months, to account for Lukasavitz's substantial assistance in the investigation or prosecution of others. U.S.S.G. § 5K1.1; 18 U.S.C. § 3553(b)(2)(A)(iii). Facing a statutory maximum of 240 months and a sentencing

guidelines range of 210 to (in effect) 240 months, Lukasavitz received the substantially lesser sentence recommended by the United States, 180 months.

Lukasavitz moves *pro se* for relief under 28 U.S.C. § 2255, contending that the imposition of his plea-bargained, downward-departed, below-guidelines sentence violated the Constitution or resulted in a miscarriage of justice. The court does not agree. The matter is fully briefed, and no hearing is needed. *See* 28 U.S.C. § 2255(b).

## I. BACKGROUND

Lukasavitz says he was raised in a stable home. His father is a college professor, his mother a nurse. He suffered neither sexual abuse nor, besides his parents' divorce when he was seventeen, other noted trauma. He attended college, and, although he received no degree and became a gardener, his letters and other papers show that he is bright and articulate. He began at fourteen or fifteen to view pornography, at eighteen to view child pornography, and at twenty-nine to trade child pornography. At the time of his arrest, at thirty-one, he spent thirty to thirty-five hours a week on the internet. His primary interest, he says, was pornography involving ten-to-eleven year-old girls or twelve-to-fourteen year-old boys. According to a treating therapist, he remains a sex-addict in need of treatment to increase his "impulse-control."

Lukasavitz traded child pornography on Google Hello, a now-defunct file-sharing program, under the name "lookingpernubbin." *Cf. Webster's Third New International Dictionary* 1547 (1986) ("Nubbin . . . 1: something (as a fruit) that is small of its kind, stunted, undeveloped, or imperfect."). He was caught because he traded voluminously with a man named Voelzke, who, during a federal investigation into child pornography on Hello, had his computer seized by the government. A review showed that, over eight

months, Lukasavitz and Voelzke exchanged around 970 illegal images, most of them, around 650, sent by Lukasavitz.

The consequent seizure and search of Lukasavitz's computer revealed him to be an ardent and promiscuous collector and dealer of juvenile pornography ranging from the dismally prurient to the grievously vile.  On the one end, Lukasavitz had nude photos, organized meticulously among dozens of folders, of girls of eight to eleven; on the other, he had depictions of children and sexual bondage, children and bestiality, even the violent sexual assault of a two-year-old.  Lukasavitz frequently chatted online with other collectors.  Several times, in similar terms, he told a story, disclaimed now as fantasy, of his sexual abuse of an eleven-year-old boy.  He expressed his desire to molest a "little girl."

After agreeing to cooperate with the government, Lukasavitz pleaded guilty to one count.  His trafficking child pornography (offense level 22), U.S.S.G. § 2G2.2(a)(2), combined with his distributing a thing of value (5), § 2G2.2(b)(3)(B), on a computer (2), § 2G2.2(b)(6); his possessing images depicting sadism (4), § 2G2.2(b)(4), as well as children under twelve (2), § 2G2.2(b)(2); and his possessing more than 600 images (5), § 2G2.2(b)(7)(D), produced an offense level of 40.  He received a three-level reduction for accepting responsibility for his offense, § 3E1.1, leaving a final offense level of 37, which, with a criminal history category of I (*i.e.*, no criminal history), suggested a sentence of 210 to 262 months in prison, a range that the statutory maximum, 18 U.S.C. § 2252A(b)(1), capped at 240 months.  Helping federal authorities pursue other offenders earned him a motion from the government requesting a below-range sentence of 180 months.  18 U.S.C. § 3553(b)(2)(A)(iii).

At his sentencing hearing, Lukasavitz confirmed that his counsel and he had discussed carefully the plea agreement. Then defense counsel argued for a sentence below even the government's lenient recommendation; she proposed the unfairness of the sentencing guidelines, which had produced a sentencing range around the statutory maximum; she observed that Lukasavitz had never sold pornography for profit; she tried to distinguish cases cited by the government, and she raised cases in which, she claimed, a defendant like Lukasavitz was granted lenience; she emphasized his progress in therapy, the support of his family, the quality of his cooperation with the state, and the purported eloquence and sincerity of a letter he wrote to this judge.

The prosecutor argued his counterpoints: the seriousness of the crime, the soundness of his authorities, the restraint shown by the government, and the need to deter those who barter in a vast and lamentably durable market for child pornography. Lukasavitz received 180 months' imprisonment. The plea agreement barred a direct appeal of a within- or, as it happened, below-guidelines sentence.

## II. STANDARD

Under 28 U.S.C. § 2255(a), a prisoner may seek to alter a sentence that "was imposed in violation of the Constitution or laws of the United States," that "the court was without jurisdiction to impose," that "was in excess of the maximum authorized by law," or that "is otherwise subject to collateral attack." To receive relief under § 2255(a), a prisoner must establish that a constitutional error caused injury, *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999), or that another error caused a blatant miscarriage of justice, *Jamieson v. United States*, 692 F.3d 435, 439 (6th Cir. 2012).

## III. DISCUSSION

4

## A. Ineffective Assistance of Counsel

Lukasavitz contends that his offense level was miscalculated, that both his progress in therapy and a report by his therapist should have earned him a lower sentence, that the sentencing guidelines treat child pornography offenders too harshly, and that the court displayed bias. These are the sort of issues that a defendant must either raise on direct appeal or waive, *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996); and, accepting both the benefits and the burdens of a plea agreement, Lukasavitz waived his direct appeal. To the extent he tries to raise his issues directly, he rearranges the terms of his plea agreement to retain the benefit and discard the burden. That he may not do. *Accord Clinkscale v. United States*, 367 F.Supp.2d 1150, 1157 (N.D. Ohio 2005) (citing *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)); *see also United States v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995). He may, however, raise most of his issues indirectly, by claiming ineffective assistance of counsel. *Weinberger*, 268 F.3d at 351. He insists throughout his motion that his counsel was ineffective.

To establish ineffective assistance, Lukasavitz must show both that his attorney's performance failed to meet the minimum professional standard and that the poor performance harmed him. *Strickland v. Washington*, 466 U.S. 668 (1984). Lukasavitz argues that he suffered harm because, in the absence of his counsel's errors, both his guidelines range and his sentence might have been lower. Under *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), however, a defendant who pleaded guilty must show that, with more competent counsel, he probably "would not have pleaded guilty and instead would have insisted on going to trial." Although *Hill* involved a defendant who claimed that

ineffective assistance produced the guilty plea itself, *Short v. United States*, 471 F.3d 686 (6th Cir. 2006), says that *Hill* governs even if the defendant acknowledges his guilt but argues that ineffective assistance damaged his plea bargain and raised his sentence. 471 F.3d at 696-97 ("[T]he petitioner's claim of prejudice rests upon an assertion that he wound up with a less favorable plea or sentence than he otherwise would have accepted with the advice of competent counsel. Such a claim is insufficient to establish actual prejudice."); *see also Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006) ("Under *Hill* and its progeny, a claim that a defendant would not have entered this particular plea agreement is not sufficient to show prejudice.").

Lukasavitz must therefore show that, without the purportedly deficient advice of counsel, he would have proceeded to trial. But the government agreed to drop counts that could have more than doubled Lukasavitz's sentence. It agreed to an offense-level reduction for Lukasavitz's apparent contrition and for his cooperation, and, for his substantial assistance, it agreed to seek an additional reduction, to below the guidelines range. Perhaps most importantly, it implicitly agreed not to expose a jury—or the sentencing judge—to a full display of the evidence at the core of the case. The court explained at the sentencing hearing:

> This is, by the way, a very antiseptic way of proceeding in this case. There has not been a trial. I have not seen one of these images. I've only heard them described in words by [the prosecutor]. And I'm highly agitated at the behavior simply from the descriptions. Think how much more impact there would be upon a sentencing judge if he were to have actually . . . been . . . exposed to the fruits of Mr. Lukasavitz's behavior over the past . . . years.
>
> It might provide some insight as to why it's perhaps strategically wise for a defendant to enter a plea of guilty, rather than contesting these matters and exposing his behavior in full bloom to the judge who ultimately may be responsible for sentencing him.

(Dkt. # 28 at 40.)  Given the options available, the circumstances of the plea agreement were, for Lukasavitz, entirely clear and eminently advantageous.

A plea bargain would have been best for Lukasavitz no matter what.  Had he received both the guidelines calculation and the weighting of sentencing factors to which he says he was entitled, his agreeing to plead guilty would have been more, not less, rational.  His § 2255 motion fails; he must abide by his plea agreement, which, all things considered, treats him quite favorably.

In any case, there is no merit to Lukasavitz's complaints about his sentence.

### B.  The Guidelines Calculation

Lukasavitz challenges the offense-level enhancements he received for using a computer and for possessing more than 600 images, and he asserts his entitlement to an offense-level reduction for his purportedly minor role in his offense.

Lukasavitz was convicted of "knowingly . . . transport[ing] . . . using any means . . . of interstate . . . commerce . . , including by computer, . . child pornography."  18 U.S.C. § 2252A(a)(1).  And he received a two-level enhancement because his offense "involved the use of a computer . . . for the . . . transmission . . . of the material" in question.  U.S.S.G. § 2G2.2(b)(6).  He argues that he was wrongly punished twice for using a computer.  *See United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010).  The computer, however, was incidental, an optional mechanism in the commission of the underlying offense.  If Lukasavitz had mailed the child pornography, or sent it by some other means, he would have committed the same crime.  Congress chose to clarify, in the statute, that a computer can send something to another state, but that does not make the use of a computer an element of the offense.  The offense consists

only of knowingly sending child pornography in a manner that engages interstate commerce. By doing those things, Lukasavitz earned the base offense-level attached to 18 U.S.C. § 2252A(a)(1). By doing them on a computer, he earned the separate enhancement in U.S.S.G. § 2G2.2(b)(6).

U.S.S.G. § 2G2.2(b)(7)(D) imposes a five-level enhancement for an offense involving more than 600 images. Lukasavitz raises several ways the government might have over-counted images, including by counting thumbnails, by counting images that were never transported, and by over-counting videos (which qualify, under § 2G2.2 comment 4, as 75 images). The big problem with this speculation is that, according to the pre-sentence report, Lukasavitz sent around 650 images of child pornography to Voelzke alone. Although he lists ways that images can be miscounted, Lukasavitz provides no reason to suspect that the government miscounted in this instance. *See United States v. Wright*, 464 F.App'x 475, 482 (6th Cir. 2012). Better evidence is absent only because Lukasavitz agreed to plead guilty. If he had any actual doubt, he could have asked during the plea bargaining to confirm the government's count. It appears he has instead tried to play possum.

Under U.S.S.G. § 3B1.2, a defendant may earn a two- or four-level reduction by showing he played a "minor" or "minimal" role in the species of crime at issue. Lukasavitz says a thorough review might show that, when he traded with Voelzke, he received more sadistic material than he sent. Even if Lukasavitz is correct (nothing suggests he is), his argument fails on its own terms. He sent to Voelzke twice the volume of material he received, and, because he traded in a diffuse network, comparing him to only one person makes no sense. Moreover, his argument misses the point.

"The issue is whether . . . [the] defendant played a part that is substantially less culpable than the average participant in similar crimes," not whether the defendant "was less involved than those who acted with [him.]" 21 Am. Jur. 2d *Criminal Law* § 800 (2013). There is, indeed, no reason to treat a 50-image trader in a 10,000-image conspiracy less harshly than a 50-image trader in a 100-image conspiracy. Lukasavitz never argues that he is plainly less culpable than the average trader of child pornography.

The offense level was calculated correctly.

### C. Psychological Evaluations

Lukasavitz's counsel submitted a letter from one therapist and a report from another. The letter described Lukasavitz's progress in therapy, and the report stated that Lukasavitz will probably not commit another offense. Lukasavitz contends that both the letter and the report should have compelled a lower sentence.

The letter identifies a defendant's ordinary effort, in the aftermath of his arrest, to attend therapy. Lukasavitz attended therapy because he accepted responsibility for his crime, and, because he accepted responsibility, he earned an offense-level reduction. His sentence therefore accounts for his therapy. *See* U.S.S.G. § 3E1.1 cmt. n.1(g); *United States v. Donnelly*, 475 F.3d 946, 956 (8th Cir. 2007).

The report is curious. It notes that Lukasavitz told several people "the exact same story" of his "receiv[ing] oral sex from an eleven-year-old," that he "admitted to viewing pornographic material at a young age," and that he displays "voyeuristic pedophilia" and sex addiction; it says that Lukasavitz needs therapy "sensitizing him to the . . . consequences of sexual abuse" and "focus[ing] on denial and minimization issues, arousal reconditioning," "skills to manage . . . sexual addiction," and "relapse

9

prevention"; and yet it claims Lukasavitz "is currently at a low-risk to re-offend sexually." It provides no reasons why he is safe; it states merely that he scored low on the "Vermont Assessment of Sex-Offender Risk."

The federal case law contains only a couple passing references to the "Vermont Assessment." According to its creators, it is still "an experimental instrument" that "is best used as a decision aid along with professional judgement and other appropriate tools." Robert McGrath & Stephen Hoke, *Vermont Assessment of Sex Offender Risk Manual* 1 (2001), http:// www.csom.org/ pubs/ VASOR.pdf (visited Mar. 7, 2013). So it appears to the court that Lukasavitz's therapist should not have replaced independent analysis with a bare appeal to the authority of the test. Moreover, many of the scoring factors in the "re-offense risk" part of the test, such as "force used during current offense" and "relationship to the victims," pertain only to a defendant who has committed a "hands-on" sexual offense, *see* McGrath & Hoke 9-13; the test thus appears to treat sexual offenders not in this category leniently. In fact, a look at the pertinent scoring grid reveals that almost any score will qualify a defendant as a "low risk" of committing a new offense. The test's creators provide this candid explanation:

> The upper level of the 'low' risk section that extends vertically [to near the top] of the scoring grid is designed to identify non-contact sex offenders *whose risk to reoffend may be high* but who have no history of hands-on sexual offending or other violent behavior.

McGrath & Hoke 2 (emphasis added); *see also id.* (noting that ninety percent of the test's study sample were "hands-on" offenders). The Vermont Assessment is not designed to predict whether someone arrested for trading child pornography will trade child pornography again. The therapist's report is not useful.

Lukasavitz raises an alternative argument, that his counsel should have asked a therapist to testify or should have sought the opinion of another expert. A licensed practitioner typically enjoys a presumption of competence, *see Fautenberry v. Mitchell*, 515 F.3d 614, 625-26 (6th Cir. 2008), and neither the letter nor the report display an obvious defect that no effective attorney would miss. As for neither expert's testifying, counsel made a routine and proper tactical decision to herself promote the letter and the report. Her defense of Lukasavitz sufficed. Further, even if it did not suffice, Lukasavitz fails to show that a better expert could get him a lower sentence. First, it is not clear how much the average therapist can really say about the odds that a defendant will return to child pornography. "Statistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children." *United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011) (Posner, J.). And second, as will be discussed next, a sentencing judge need not fixate on incapacitating the dangerous.

### D. The Sentencing Guidelines

Lukasavitz faults his counsel for not raising an influential article, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines*, in which a federal public defender, Troy Stabenow, states that the penalties for child pornography offenses arise not from "sound research," but instead from "morality earmarks, slipped into larger [congressional] bills . . , often without notice, debate, or empirical study[.]"  Stabenow 3.

During the sentencing hearing Lukasavitz's counsel argued, among other things, the unfairness of the guidelines, which, she said, unreasonably treated Lukasavitz the same as a defendant who sold child pornography for money.  Both sellers and traders sustain the market and perpetuate the victimization of the children depicted, so counsel's argument failed.  But Lukasavitz enjoyed vigorous representation, and he cannot succeed now arguing that, in hindsight, his attorney should have added to her argument a specific article.  Counsel is obligated to provide a defendant such as Lukasavitz at least a competent defense, but not necessarily a masterly one.  There will almost always be another article, another law review note, another policy paper that an attorney could have (and, a defendant will later think, should have) raised.

In any event, Lukasavitz fails to show that the Stabenow article could have helped lower his sentence.  The guidelines ranges for child pornography offenses have increased recently because of brisk legislating by the elected branches of government. *See generally United States v. McNerney*, 636 F.3d 772, 775-78 (6th Cir. 2011).  The Stabenow article disapproves of Congress's influencing the sentencing guidelines and, based on legislative history, proclaims that Congress did not deliberate enough before

increasing child-pornography sentences. *See* Stabenow 17-26. A sentencing judge, however, may not be so critical of democratic influence on the decisions of Congress, may decline to question the quality of congressional debate, and may decline to lightly dismiss Congress's comprehensive power to set criminal sentences. A sentencing judge may, in other words, reject the article's critique unreservedly. *See Garthus*, 652 F.3d at 721.

Title 18 U.S.C. § 3553(a) tells the sentencing judge to consider the accepted ends of penology—punishment, deterrence, and public safety—and several other factors. *United States v. Booker*, 543 U.S. 220 (2005), *Kimbrough v. United States*, 552 U.S. 85 (2007), and other recent Supreme Court decisions allow the sentencing judge to apply the factors in Section 3553(a) in any reasonable manner. This means that a sentencing judge may reject a guidelines range as conflicting with the judge's penological philosophy, *see United States v. Herrera-Zuniga*, 571 F.3d 568, 585 (6th Cir. 2009), but it means also, of course, that a sentencing judge may affirm a guidelines range as salutary public policy. He may, for example, decide that no amount of "sound research" can discover objectively ideal ranges of sentences—an illusive balancing of the competing ends of incarceration—but that in a given instance, in accord with the will of Congress, the pertinent guidelines range is justified by the need to deter the type of crime and the criminal. And the court said just that in this case:

> [The] deterrence of criminal conduct, societally and to the individual, is one of the inordinately important points in favor of sentencing harshly . . . in crimes of this nature. I believe the community of purveyors of child pornography to be in touch with each other. It is a defined community, and a community that interacts and that may perhaps respond when sentences of the kind suggested and calculated here are in fact imposed.

(Dkt. # 28 at 41-42.) *Cf.* O.W. Holmes, *The Common Law* 46-76 (Dover 1991) ("There can be no case in which the law-maker makes certain conduct criminal without his thereby showing a wish and purpose to prevent that conduct. Prevention would accordingly seem to be the chief and only universal purpose of punishment.").

Deterrence matters. "Young children were raped in order to enable the production of the pornography" that Lukasavitz "both consumed himself and disseminated to others." *Garthus*, 652 F.3d at 721-22. "The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced." *Id.* If anything, Lukasavitz's extensive participation in the market for child pornography warranted more than the below-guidelines sentence Lukasavitz received. His complaints about his sentence fail. *Cf. United States v. Overmyer*, 663 F.3d 862, 863, 865 (6th Cir. 2012) (affirming a child pornography sentence) ("[The district court] explain[ed] that it agreed with the severity of the child-pornography sentencing guidelines . . . . In cases where the district court and the sentencing commission independently agree about an appropriate sentencing range, . . . it will be difficult to establish that the sentence is unreasonable."); *United States v. Zauner*, 688 F.3d 426, 429 (8th Cir. 2012) (affirming a child pornography sentence) ("When a district court varies downward from a presumptively reasonable guideline sentence, . . . it is nearly inconceivable that the court abused its discretion in not varying downward still further.").

### E. Alleged Bias

Lukasavitz claims that the court displayed bias at the sentencing hearing. The court used "horrific," and other strong terms, to describe Lukasavitz's offense. (Dkt.

# 28 at 48.)  The court, Lukasavitz says, "le[ft] no harsher language for the more serious offenses of child pornography production and . . . [for] 'hands-on' crimes against children."  (Dkt. # 33 at 14.)  Lukasavitz has come across an insight about the limited nature of language, not a sign of the mild nature of his conduct.  Indeed, his father said he was "shocked and appalled" by his son's behavior, and Lukasavitz himself wrote of "the horror" of what he did.

"Anger and pity . . . may be felt both too much and too little . . ; but to feel them at the right times, with reference to the right objects, towards the right people, with the right motive, and in the right way, is what is both intermediate and best, and this is characteristic of virtue."  Aristotle, *Nicomachean Ethics*, bk. II, ch. 5 (W.D. Ross transl. 1908).  Lukasavitz, at his sentencing, received a calm, measured but firm reaction to the record and the conduct at hand.

## IV.  CONCLUSION

Peter Lukasavitz accepted a favorable plea agreement, and, in consequence, he waived an appeal.  Because he would not, if rational, have rejected the favorable plea agreement under any remotely possible circumstance, he may not question his attorney's performance.  And if he could question her performance, or his sentence, his efforts would fail on the merits.  Accordingly,

IT IS ORDERED that the 28 U.S.C. § 2255 motion [Dkts. # 23, 33] is DENIED.


 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 19, 2013

15

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 19, 2013, by electronic and/or ordinary mail.

                                               s/Lisa Wagner
                                               Case Manager and Deputy Clerk
                                               (313) 234-5522